R. J. GARDNER *v.* ADALINE DUNCAN

[61 South. 545]

1. APPEAL AND ERROR. *Waiver of objections. Limitations. Equity. Decree. Conformity to pleadings. Writ of assistance. Nature of remedy. Right to relief.*

When a defendant in equity suffers a decree to be taken against him upon a *pro confesso* order, he cannot, in the appellate court, take advantage of the statute of limitations, although it appears upon the face of the bill that the time prescribed by the statute as a bar has elapsed.

2. SAME.

The statute may be waived, and a party will be held to have waived it in equity, unless he shows an intention to rely upon it, by plea, answer or demurrer.

3. EQUITY. *Decree. Conformity to pleadings.*

Where the prayer of a bill is that title be divested out of the defendant and invested in complainant and for general relief it was proper for the court in its decree to order that a writ of assistance issue in the event defendant failed to deliver possession of the land to complainant within thirty days, and it is immaterial that the bill contained specifically no prayer therefor.

4. SAME.

Such a writ is equivalent to the writ of *habere facias possessionem* at law, and issues as of course without notice, so far as the parties to the record are concerned, when necessary to put into execution a decree of the court.

5. WRIT OF ASSISTANCE. *Right to relief.*

Where the decree in a cause settled complainant's rights to the land in controversy, the awarding of a writ of assistance need not be postponed until defendant has refused to deliver possession.

APPEAL from the chancery court of Bolivar county.

HON. M. E. DENTON, Chancellor.

Bill by Adeline Duncan against R. J. Gardner. From a decree for complainant, defendant appeals.

Appellee was complainant in the court below, and appellant was defendant. Appellee is an old, ignorant, negro woman, and appellant is her well-educated son. The bill filed in the chancery court by appellee alleges that in 1898 complainant gave her son a sum of money with which to purchase for her a tract of land; that defendant took the money, and fraudulently and without complainant's knowledge took title to the property in his own name, instead of complainant's and that she did not know anything of the claim of her son to the property until a few months before the filing of this bill, (March, 1911.) The prayer of the bill is that the title to the land be divested out of her son, and invested in complainant, and for general relief. The suit was made returnable to the September term, 1911, of the court, and personal service was had upon defendant a few days after the filing of the bill.

Chancery court convened on September 18, 1911, and on September 27th, two days before court adjourned for the term, counsel for the complainant appeared, and asked and obtained a decree *pro confesso;* no answer having been filed by defendant. This decree was then made final, and the relief prayed granted, and a writ of assistance ordered to be issued to place complainant in possesion of the land in event defendant failed to comply with the decree. In November, 1911, the defendant by counsel filed a motion to set aside the decree *pro confesso* and final decree, and asked permission to file an answer on the merits. The court overruled the motion, and the defendant appeals.

On appeal it is insisted that this action of the court was erroneous, for the reason that the bill on its face shows that more than ten years had elapsed since the cause of action accrued and before the filing of suit, and that the suit was therefore barred by statute, and that it is not alleged that complainant exercised reasonable diligence to discover the fraud which she alleged had been perpetrated upon her by her son without her knowledge; that therefore, since the bill fails to state a case for relief, the decree is invalid and should be set aside.

*Bedford, Allen & Bedford,* for appellant.

The original bill of complaint does not state a valid cause of action against the defendant: For that the said bill shows upon its face that the complainant's cause of action therein stated was barred by the ten-year statute of limitations; and there is no direct or positive allegation in said bill that complainant might not and could not, by the exercise of due and reasonable diligence, have discovered, more than ten years prior to the filing of said bill, the fact that the legal title to the land in controversy was vested in the defendant, and that defendant claimed to be the owner thereof.

Section 3125 of the Mississippi Code of 1906 is as follows: "Bills for relief, in case of the existence of a trust not recognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after; saving, however, to persons under disability of infancy or unsoundness of mind, the like period of time after such disability shall be removed; but the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years."

Section 3091 of the Mississippi Code of 1906 is as follows: "A person claiming land in equity may not bring suit to recover the same but within the period during which, by virtue of the provisions hereinbefore contained,

he might have made an entry or brought an action to recover the same, if he had been entitled at law to such estate, interest, or right in or to the same as he shall claim therein in equity; but in every case of a concealed fraud, the right of any person to bring suit in equity for the recovery of land, of which he or any person through whom he claims may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which the fraud shall, or with reasonable diligence might, have been first known or discovered."

The bill of complaint fixes the first day of December, 1898, as the date upon which the fraud complained of was perpetrated, to wit, the purchase of the tract of land in controversy by defendant with funds of the complainant, the defendant taking the title thereto in his own name, without the knowledge or consent, and contrary to the instructions, of the complainant. The bill of complaint was filed on the 14th day of March, 1911, more than twelve years after the perpetration of the fraud; and had the bill of complaint not gone further, manifestly the cause of action was barred as disclosed upon the face of the bill. But the complaint charges that the complainant "had no knowledge that he (the defendant) had violated the trust which she reported in him, by so purchasing the said tract of land for himself and taking the title thereto in his name; nor did she know that he claimed to be the sole owner thereof in fee simple until on or about the —— day of October, 1910. And that, immediately thereafter, she protested against the act of the said defendant in so using her money for the purpose of purchasing said tract of land for himself and in his own name." This is the sole allegation in the bill pertaining to the concealment of the alleged fraud. We call the special attention of the court that nowhere in the bill of complaint is it alleged that the complainant (in the language of section 3091) might not, with reasonable diligence, have discovered the fraud at an earlier date. For aught that

appears from the bill, the complainant might, with reasonable diligence, have discovered the perpetration of the fraud, the day after, or within a year, or within two years after its perpetration on the 1st day of December, 1898; thereby causing the cause of action to have accrued within such time and to have become barred on or before the date of the filing of the bill.

In the case of *Jones* v. *Rogers* (85 Miss. 805, 38 So. 742), section 2731 of the Code of 1892 (which is identical with section 3091 of the Code of 1906, *supra*) was before this court for construction, and in that decision the court said: "This section, 2731, in our opinion, is in the nature of a statute of rest. The complainants here are 'claiming this land in equity,' and, not having brought their suit to recover within the 'period' prescribed by section 2731, are clearly barred, unless the allegations of their bill bring them within the last clause thereof." At page 838 the court lays down the following rule:

"To prevent this statute from beginning to run against them in favor of defendants, complainants must not only allege, first, fraud and the facts or acts constituting it; second, that these acts or fraud were committed by defendants or some one in privity with them; third, that they were concealed from complainants by defendants or their privies; fourth, that complainants did not know or discover this fraud over ten years before instituting their suit; but fifth, they must also allege and show that they exercised reasonable diligence to discover it sooner, or that they could not, with reasonable diligence, have discovered it sooner." The bill of complaint in this suit contains no such allegation, viz., that complainant exercised reasonable diligence to discover the fraud sooner, or that she could not, with reasonable diligence, have discovered it sooner. There is simply the bare statement that complainant did not learn of or discover the fraud practiced upon her by defendant, until some time in October, 1910; but whether her failure to earlier discover

the true state of affairs and the real status of the legal title to the land was due to her own negligence and lack of effort upon her part to ascertain the condition of the title, or whether it was due to further fraud and deceit upon the part of the defendant, is not attempted to be explained by the allegations of the bill. This being true, then, under the decision in *Jones* v. *Rogers, supra,* the complainant's cause of action was clearly barred by the statute of limitations at the time of the filing of the bill of complaint, and no relief could properly have been granted thereon.

The decree is too broad in its effect and grants relief not prayed for in the bill of complaint and for which no appropriate allegations are contained in the bill of complaint.

The decree is too broad in its effect and grants relief not sought or prayed for in the bill of complaint, and grants certain affirmative relief for which there are no appropriate allegations in the bill of complaint. In this, to wit, the sixth paagraph of the final decree is as follows: "It is further ordered, adjudged and decreed, therefore, that the said defendant be, and he is hereby, required and enjoined to place the said complainant in possession of the said tract of land within thirty days from this date; and, in default thereof, that a writ of assistance shall be issued by the clerk of this court directing the sheriff or other proper officer of Bolivar county, state of Mississippi, to take possession of the said tract of land last aforesaid and immediately thereafter to surrender and deliver possession thereof to the said complainant, or to her authorized agent or representative."

On the 18th day of December, 1911, a writ of assistance was issued by the clerk of the chancery court of Bolivar county, directed to the sheriff of said county, which, after reciting the rendition of the final decree in this cause, proceeded thus: "You are, therefore, commanded to remove the said R. J. Gardner, and all other persons wrong-

fully on or in possession of the said above described prem-
ises, or tract of land, and to put the said Adaline Duncan
in full and complete possession thereof; to this end, you
are authorized to, and will, use such force as may be nec-
essary to so place said complainant, Adaline Duncan, in
full and complete possesion of said premises or tract of
land first above described, and therefore make due return
on this writ, with your proceedings indorsed hereon.''

The return of the sheriff, indorsed upon the writ of as-
sistance is in the following words: ''Executed the within
writ by putting Adaline Duncan in full and complete pos-
session of the tract of land herein described, to wit, the
northwest quarter of the northeast quarter of section 12,
township 25, range 5 west, of the second judicial district
of Bolivar county, Mississippi. This the 21st day of De-
cember, 1911.''

The bill of complaint contains no prayer that the com-
plainant be placed in possession of the said tract of land;
neither does the bill allege that the defendant is in pos-
session of the said land nor does the bill show affir-
matively who, if anyone, is in possession thereof. Yet
the broad and sweeping decree ''requires and enjoins''
the defendant to place the complainant in possession of
said land within thirty days after the rendition of the de-
cree; or, in default thereof, authorizes the issuance of a
writ of assistance directed to the sheriff to take posses-
sion of said land and to surrender and deliver possession
thereof to the complainant. And, further, the writ of
assistance issued, still broader and more sweeping in its
terms and directions than the final decree commands to
the sheriff to ''remove the defendant and all other per-
sons wrongfully on or in possession of said land, and
to put the said Adaline Duncan in full and complete pos-
session thereof.'' This, notwithstanding that for aught
shown to the contrary by the bill of complaint, there may
have been some person in possession of said land with
title paramount to that of either the complainant or de-

fendant in this suit; notwithstanding it is not alleged that the defendant or anyone claiming by, through or under him is in possession of said land; and notwithstanding the bill of complaint contains no prayer for such drastic and extraordinary affirmative relief and does not invoke the issuance of any such summary process.

We most earnestly insist, therefore, that the provisions of the decree enjoining and requiring the defendant to place the complainant in possession of the premises, or, in the alternative, for the issuance of a writ of assistance are not supported by proper averments of an affirmative nature in the bill of complaint nor by the decree *pro confesso* of which such final decree is predicated; nor is such relief warranted by an appropriate prayer therefor.

We readily concede that had the bill contained a proper allegation to the effect that the defendant was in possession of the premises, or that the person in possession claimed by, through or under the defendant, then it would have been eminently proper for the court to award the issuance of a writ of possession under the prayer for general relief, even though such relief was not expressly prayed; but it is our contention that it was necessary that the bill contain such an allegation, that such allegation was material and indispensable, in order that the court might award a writ of assistance or a writ of possession, even though the bill contained an express prayer for such relief. How could the court presume to require and enjoin the defendant to place the complainant in possession when it is not alleged in the bill (and the naked allegations of the bill are the only foundations upon which the decree was based) that the defendant was in the possession of the premises? Or, how could it have awarded, in the alternative, a writ of possession requiring the sheriff to take possession of said premises, no matter under what title the person, whoever he might be, in possession claimed, and to surrender and deliver the possession thereof to the complainant, when, from aught

which appeared to the contrary, some person claiming under a paramount title, or some *bona fide* purchaser for value without notice from the defendant, and not made a party to this suit, may have been in possession of the land at the very time the decree was rendered, or even at the time the bill was filed? In order that the court might have been authorized to incorporate such a provision in its decree, we earnestly contend that it was material, necessary, essential and indispensable that the bill should have alleged either that the defendant or those claiming by, through or under him, was in possession of the land at the time of the filing of the bill, even though the bill contained an appropriate express prayer for such relief.

In the case of *Brown* v. *Goldsby,* 34 Miss. 437, it was held that where the defendant is not in possession of a slave sought to be recovered in equity, either at the time of the filing of the bill or during its pendency, no decree can be rendered against him, either for the delivery of the slave (because defendant did not have possession) or for damages for his conversion or detention (the remedy therefor being at law), even though the bill alleges that the slave is in the defendant's possession. It will be observed that the bill alleged that the slave was in the defendant's possesion, but it developed from the evidence that such was not the fact. The court said, in the course of its opinion:

"The numerous cases in which bills in equity for the recovery of possession of slaves have been entertained, proceed upon the general principle that slaves are a species of property of peculiar value to the owner, which cannot be adequately compensated in mere damages for their loss; and therefore that the owner is entitled to invoke the extraordinary powers of a court of equity to enable him to have the slave restored to him in specie, by the party in whose possession he may be found. The very principle and necessity of the jurisdiction is to compel

and insure a delivery by the person holding possession to the party entitled to the possession. And hence, possession by the defendant at the time of the institution of the suit, or during its pendency, is a necessary jurisdictional fact, without which the very object of the proceeding would fail.

"For these reasons, we are of the opinion that where the defendant is not in possession of a slave sought to be recovered in equity, either at the time of the filing of the bill, or during its pendency, no decree can be rendered against him . . . though the bill allege that the slave is in the defendant's possession."

So in the case at bar, before the court could decree that defendant surrendered possession to complainant, it was essential that it be shown that the defendant, or those claiming under him, were in possession of the premises at the time the suit was filed. The only proof of complainant's rights before the court consisted of the bare allegations in her bill of complaint. This bill did not allege that defendant or his privies were in possession of the land; hence, again applying the well-settled principle that all pleadings are to be most strictly construed against the pleader, the presumption necessarily arises that neither defendant nor his privies were in possession thereof. This being the presumption—neither defendant nor his privies were in possession of the land at the time of the rendition of the decree—no necessity arose for the provision for the issuance of a writ of possession, for a writ of possession could only issue as against defendant, his privies or purchasers *pendente lite*; as to all other persons, the writ of assistance was unwarranted, unauthorized beyond the jurisdictional power of the court to grant and a palpable abuse of process.

*Longino & Ricketts,* for appellant.

A careful reading of the bill of complaint will show that the purchase of the land and the conveyance thereof to

the appellant was carried out and completed about twelve years before the date of the filing of the bill and that while the bill alleges that the fraudulent conduct of the appellant as charged in the bill was not known to the appellee until October, 1910, it is nowhere charged either that the apellee used reasonable diligence to discover said fraud before said time or that she could not, by the use of reasonable diligence, have discovered same within said time.

Section 3091 of the Mississippi Code of 1906 provides that in case of concealed fraud the right of any person to bring suit in equity for the recovery of land shall be deemed to have first accrued "at and not before the time at which the fraud shall, or, with reasonable diligence, might have been first known or discovered."

This statute was applied and very clearly interpreted by this court in the case of *Jones* v. *Rogers,* 85 Miss. 805, in which case the court, after stating that this section was in the nature of a statute of rest, went on to say: "To prevent this statute from beginning to run against them in favor of defendants, complainants must not only allege, first, fraud and the facts or acts constituting it; second, that these acts of fraud were committed by defendants or some one in privity with them; third, that they were concealed from complainants by defendants, or their privies; fourth, that complainants did not discover or know of this fraud over ten years before instituting their suit; but, fifth, they must also allege that they exercised reasonable diligence to discover it sooner, or that they could not, with reasonable diligence, have discovered it sooner." Page 838.

For a similar statement of the law, although referring to section 3109 as to effect of concealed fraud on limitation of personal actions, we direct the situation of the court to *Hudson* v. *Kimbrough,* 74 Miss. 341.

In the light of these authorities it is indisputable that the bill of complaint herein filed by the appellee was insufficient on its face, and that a demurrer, if interposed,

would have been sustained. The bill avers the possession on the part of the appellee of a right which, on the face of the bill is barred by the statute of limitations and although attempting to charge concealed fraud and so to bring the present cause within the exception named in the statute omits entirely the essential allegation that she either used reasonable diligence to discover the true state of the affair and the real state of the title to the land, or that she could not have found out these things by the exercise of such reasonable diligence, The defect was a fatal one and when brought to the attention of the trial court by demurrer would have resulted in the dismissal of the bill. Of course it is well settled that the statute of limitations may be brought up on demurrer in the chancery court. *McNair* v. *Stanton,* 57 Miss. 298; *Jones* v. *Rogers,* 85 Miss. 805; *Thames* v. *Mangum,* 87 Miss. 575.

The bill fails to state a case for relief and the final decree therein, based upon the *pro confesso,* is invalid and should be here set aside. This statement is amply sustained by the decisions of this court.

"Notwithstanding the decree *pro confesso,* the final decree and the failure of the appellant to appear in the court below, if, on the whole case as presented here, it appears that the appellee was not entitled to relief, the decree must be set aside." *Simpson* v. *Smith Co.,* 75 Miss. 505, 508; this case cites *Wooten* v. *Gwin,* 56 Miss. 422.

The same rule is fully laid down in the case of *George* v. *Solomon,* 71 Miss. 168, in the opinion of the court in which case is used the following language: "We are unable to discover any right, legal or equitable, stated in complainant's pleading entitling him to relief. The demurrer to the original bill should have been sustained. If no defense had been made by the defendant to the bill of complaint, a decree *pro confesso* thereon would not have warranted a final decree against either of the de-

fendants, for, although a decree *pro confesso* may be entered against a defendant, no final decree can be given thereon unless the bill confessed states a case for relief." Citing *Garland* v. *Hull,* 13 Smed. & M. 76. See also on this point *Belew* v. *Jones,* 56 Miss 342.

We contend that the chancellor should on the showing made by the appellant herein, have set aside the decrees entered in this cause and that his failure to do so was error. This was a case of an attempt to fix a trust on land by a suit begun by an unsworn bill alleging concealed fraud. The bill was uncertain and indefinite, not only in the respects here inbefore pointed out but in that there was no allegation showing definitely that the money said to have been paid by appellee to appellant for the purchase of the land was all of the purchase money of the land and for that uncertainty it was not a proper bill upon which to grant relief as prayed for therein.

The bill filed by the appellee was insufficient and on the showing made thereby the appellee was not entitled to the relief sought, and since the bill did not state a case for relief, all of the decrees made thereon were wrongfully made and entered. Wherefore, it is respectfully submitted that on the record and in view of the long line of decisions of this court on the points in this case the decree entered herein was wrong and the chancellor erred in refusing to set same aside.

*D. A. Scott* and *A. D. Somerville* for appellee.

The statute of limitations can never be availed of unless it is properly pleaded; unless the defendant takes advantage of this statute by some affirmative action the privilege, which is his alone to plead, is conclusively presumed to have been waived. And so we contend that in the second place that even if the court should hold that this bill shows upon its face that the claim therein set forth was barred by the statute of limitations, yet it is too late for the defendant to now set up this plea.

That the statute of limitations must be taken advantage of at the proper time and in the proper manner, by the defendant himself, and that in default of this he will be conclusively presumed to have waived this privilege, seems to be quite well-settled law. In view of the practical unanimity of the authorities sustaining the above proposition, and in view of the clear and unmistakable decisions of this court on this proposition, we would not pause here but to mention this fact. The ban of the statute of limitations, however, is the main, and in one of the briefs for the appellant the only, cause which is relied upon and urged for the reversal of the order of the chancellor in this cause.

Our conception of this proposition of law is so fully set forth, our ideas are so fully sustained, and the point is so fully disposed of by this court that we feel justified in quoting the full text of a very short and concise opinion rendered in the case of *J. Patterson* v. *Ingram & Reed*, 23 Miss. 87.

Mr. Justice CLAYTON delivered the opinion of the court: "The single point in this case is whether, after a decree for the complainants founded upon a *pro confesso* order regularly taken, the defendant, upon appeal to this court, may take advantage of the statute of limitations, if it appear upon the face of the bill that the time prescribed by the statute as a bar has elapsed. It is insisted for the appellant that this may be done, because it might be done upon a demurrer to the bill. That they are both but modes of admitting the facts charged.

"We do not think the analogy holds good. Upon a demurrer the party asserts all his legal rights, and relies upon them. The general rule is, that the statute of limitations must be set up as a defense in some way, either by plea or answer. But in equity an exception has been made in favor of a demurrer. The statute may certainly be waived, and unless the party by some means shows an intention to rely upon it by pleadings he will be held to

have done so. Suppose the bill had been answered, and no
benefit of the statute invoked, could this court have inter-
posed it? Certainly not, if the generally received doc-
trine on the subject is to be regarded. A *pro confesso*
much more nearly resembles an answer admitting the
charges of the bill, than a demurrer. When a demurrer
is interposed the party confessedly stands upon all of his
legal rights, and cannot be deemed to have waived any.
But when he answers to the merits, and does not rely
upon the statute of limitations, he is held to have waived
it. This is the effect, which, in our opinion, must be as-
cribed to the *pro confesso*. The decree is affirmed."

The above case, we urge, is in every respect similar to
the case at bar. We adopt the opinion of the court as a
part of our brief and feel that it will be conclusive in this
case.

To the same effect is the decision of this court in the
case of *Buckingham* v. *Walker*, 48 Miss. 609. The for-
mer practice was that if a demurrer was interposed in
such a case as the one at bar, the statute of limitations
would necessarily have to be expressly relied upon. In
the case of *Dickson* v. *Miller*, 11 S. & M. 594, and at page
604 we find: "The act of limitations does not fairly arise
in this proceeding. It is not relied upon expressly in the
demurrer." This same attitude, to wit, that the defense
of the statute of limitations must be specially set up in
a demurrer in order that it may be availed of, is taken
again by this court in the case of *Archer et al*, v. *J nes
et al.*, 26 Miss.————.

If a plea of the statute be overruled the same defense
must be reiterated in the answer. See *Livermore et al.* v.
*Johnson,* 27 Miss. 284.

Not only does a party have to plead the statute of lim-
itations but should a party plead the wrong statute they
cannot invoke the one which was not pleaded. In *Bridg-
forth* v. *Payne,* 62 Miss. 777, Judge COOPER says: "The
appellant having relied upon a statute not applicable can-

not invoke the protection of one not pleaded. A party who pleads or replies to a statute of limitations not appropriate to the action must abide the result. *Boyd* v. *Barrenger,* 23 Miss. 269; *Trustees* v. *Gilman,* 55 Miss. 148.''

The statute of limitations is a personal privilege and can be availed of by the defendant and him alone. Quoting Judge COOPER in *Bridgforth* v. *Payne, supra,* we find that, ''The appellant cannot have the advantage of this plea of the seven years' statute of limitations interposed by his codefendant Jenkins. The defense is a personal one and must be interposed by the party seeking its protection.'' To the same point, and reviewing the authorities, we find our court follows its decisions above quoted in the case of *Lewis* v. *Buckley,* found in 73 Miss. 58.

Again in 82 Miss——, we have a more elaborate setting and demonstration of this rule. In the case of *Anderson* v. *McNeal* the creditors of a defendant sought to plead the statute of limitations for him. McNeal, however, refused to plead the statute of limitations for himself. The court says: ''The fundamental mistake of the appellants is the idea that under our statute the mere lapse of the time required to bar the remedy bars it, and extinguishes the right, whether the debtor chooses to plead it or not. This is an erroneous view. The statute never operates to extinguish the right unless it is pleaded. McNeal alone can plead the bar. His creditors cannot make him plead it, as it is his personal privilege to do so or not, as he pleases.''

We deem it unnecessary to cite any further Mississippi authorities on this point, or to cite outside authority, but have collated some of the authorities on this point and cite them in our brief at the end of the argument.

Counsel for the appellant, in their elaborate brief, urge this court to hold that the final decree was too ''broad and sweeping'' in that it provided for a writ of assistance; it admits that in every other particular the final decree is supported by the bill, however. In reply to this

we most respectfully submit that the question as to whether or not the writ of assistance should or could have been issued in this case has no place in this regard, for it is only allowed by the final decree in case certain contingencies should arise and at the time the order appealed from was made and entered, no writ of assistance had ever been issued. Therefore the question had never come up.

Counsel for appellant in their zeal not only quote from the final decree allowing this writ, but actually quote from the writ itself, which was issued after the order appealed from had been entered. But even this is not all. Counsel insist that, "there may have been some person in possession of the said land, with title. paramount to that of either the complainant or defendant in this suit," etc., and in this insisting and digressing we will add that the counsel were guided by the facts in this case. That a party claiming title paramount to either of the parties to this suit has come in since and enjoined the execution of the writ of assistance, which latter litigation is now pending before the court from which this appeal is taken; and that it would seem that from these facts the appellant has no equitable claim to this land at all since he was the instigator of the latter suit. It is thus evident to the court that this appellant is now conducting two suits wherein he endeavors to acquire this land.

The final decree provides that the defendant in the lower court shall deliver possession of this land to the complainant, and in default thereof, that a writ of assistance shall be issued to fully and finally carry out the said final decree. Thus being in the alternative, the decree could not have been objected to should the writ of assistance have never been issued or taken advantage of. We insist that, so far as this record is concerned, the writ of assistance has never been issued.

Were this question properly before the court for determination we contend that the writ of assistance was clearly and unmistakably allowable in this instance.

The position taken by counsel for the appellant is, as stated by them: "We readily concede that had the bill contained a proper allegation to the effect that the defendant was in possession of the premises, or that the person in possession claimed by, through, or under the defendant, then it would have been eminently proper for the court to award the issuance of a writ of possession under the prayer for general relief."

In speaking of the writ of assistance this court has said, that in the chancery court "the issuance of the writ is a matter of course, without notice, being but an execution of the mandate of this, the supreme court settling the question of the right of possession."

The case of *B. Griswold* v. *J. J. Simmons et al*, 50 Miss. 123, is in many respects similar to the one at bar and for that reason we shall ask the court's indulgence for quoting at length from the decision handed down in that case, as settling the rights of parties in this state to writs of assistance. The court said:

"It is specially objected to the decree now appealed from, that it directs the commissioner making the sale to put the purchaser in possession; that it awards a writ of assistance and decrees costs: The decree is that the commissioner to sell the lands put the purchaser in possession; if necessary (practically the same provision as in the case at bar) that the writ of assistance be awarded, and that the defendants herein, and their sureties on their appeal bonds to the Supreme Court, do pay all costs herein."

If ever, it is not now a mooted question with us, that when equity has jurisdiction of a cause, it will retain it for all the legitimate purposes of the proceeding; or in other words it will retain jurisdiction in order to administer full relief . . . (citing cases).

"The writ of assistance is a process 'well known to the law,' 2 Daniel, Ch. Pr. 1082, and notes; 2 Barb. Ch. Pr. 441."

We have quoted the above to show that the writ was proper in any event in this case; we contend, however, that under the admission of counsel for the appellant, which we have quoted above, the issuance of the writ was absolutely proper, and warranted in all respects.

The position taken by the appellant is, in short, that the writ would have been properly issued if it had been shown in the bill that the defendant was in possession of the land in controversy at the time of filing of the bill. They rest their whole contention upon the fact, as they claim, that it is not alleged that the defendant was in possession of the land.

We contend, and shall presently show to the court, that the bill, in legal intendment, shows upon its face that the defendant, Gardner, was in possession of the land at the time the bill was filed, for it is alleged in the bill that at the time of the filing thereof the defendant, Gardner, was in possession of the legal title, and the presumption of law is always that possession and occupancy follow the legal title.

The bill alleges: "He caused and induced the said railroad company last aforesaid, to convey the said tract of land to him, in fee simple, and now claims to be the sole owner thereof; that he accordingly holds the same in trust for her, the said complainant; that she has a right to have the legal title in the said tract or parcel of land divested out of the said defendant, and finally the complainant prays that the defendant be required to convey the land to her."

It is thus alleged in several different places, and alleged in every possible way, that the defendant holds the legal title to the land.

To support our contention that the above is tantamount to an allegation that the defendant was in possession of the land we have to go no further than Webster's Unabridged Dictionary, which defines "title" as "Property; possession as founding a right." See also Black's Law

Dictionary. Title is also defined by Cyc. thus: "That which constitutes a just cause of exclusive possession, or which is the foundation of ownership." Quoting *Houston* v. *Farris,* 71 Ala. 570, in which case the above definition of Webster is quoted.

This question was before the supreme court of Mississippi and was settled as above indicated in the case of *R. Wilson* v. *I. Williams' Heirs.* In this case a party had entered a part of a tract of land under a deed to the whole tract of land. The court held that he was presumed to have been in possession of all of the land which was embraced in his deed, saying:

"Howard went into possession under a deed duly recorded and his possession was therefore coextensive with the boundaries defined thereby." Angell on Lim. Par. 400; 32 Miss. 124, in which latter case the court says: "It is true that the legal title draws with it the right of possession."

This question was again brought before the court, and was again enunciated by this court in the case of *Claughton* v. *Claughton,* 70 Miss. 384. This was a case where the title was in dispute as between husband and wife, the possession being mutual; the question as to whom was in legal possession was therefore referred to the legal title, and the party holding the legal title was deemed to have been in possession; the court saying: "The title was, by his fraudulent act, vested securely, as against him, in his wife, who lived and died the owner, never having conveyed it. His claim by recognition and acquiescence of his wife and by adverse possession is frivolous. His wife was in possession with him, and the title was in her, and the mixed or joint possession was referable to the title."

Thus by alleging that the defendant was the possessor of the legal title the complainant alleged, in legal intendment and effect, that he was in possession of the land.

In concluding this part of our argument we shall direct the court's attention to the writ of assistance itself,

and show that the writ limits itself so that it is only directed to the parties who could properly have been served with a writ; again reminding the court, however, that the writ has no place  in this record, but simply meeting the argument of counsel for the appellant.

Cyc. lays down the rule that the writ of assistance "being part of the process employed in enforcing the judgment itself" is issuable at the instance of any party to the suit, and that the writ "will issue against a party to the suit or his representative, or a person coming into possession under him, *pendente lite.* So it will appear to the court that the writ could properly be issued against any party who might have bought the land *pendente lite,* from Gardner, or against Gardner himself; that they were for this purpose to be considered parties to the suit.  As the bill alleges that the defendant, Gardner, was in possession of the legal title at the time of the filing of the bill, and as it is a part of this record that *lis pendens* notice of this suit was filed with the bill, it is therefore an inevitable conclusion which this court must come to that there could not have been any party in possession except Gardner, or a purchaser *pendente lite,* so far as this record is concerned. Were Gardner or any purchaser from him, *pendente lite,* in possession of the land, they were, by virtue of the decree of the court in this case, wrongfully in possession of the land.  The writ is issued against these parties who are wrongfully in possession of the land, and against none others; by reading the writ we see that the sheriff was commanded to remove the defendant and all other persons wrongfully on or in possession of the said land.  Thus it is clear that the writ cannot be construed to have been directed to any improper person; and that under the record, as it appears here, the writ was issued against a party to the suit, and against him only, and that this was eminently proper. The writ could  only be directed to Gardner or a purchaser *pendente lite;* since the bill alleges that Gardner

was the holder of the legal title at the time the bill was filed any person who may have purchased the land thereafter was necessarily a purchaser *pendente lite* and therefore a party who was bound by this final decree.

*Frank Johnston,* for appellee.

As for the ten-year statute of limitation that is set up in this motion, that cannot be entertained for one moment. In the first place, a statute of limitation can never be set up except as a defense in the original suit, and if the bill shows on its face that the claim was within the ten-year statute and a decree *pro confesso* was rendered, a final decree would be perfectly valid in the absence of a plea of the statute of limitations.

Another complete answer to this suggestion of counsel is, that the bill clearly states a case of concealed fraud, and thereby a concealed cause of action.

It is hardly necessary for me to call the attention of the court to the fact, that where there is a concealed fraud of a cause of action, the statute does not begin to run until the fraud is known to, or can reasonably be ascertained by a complainant.

Finally, the objection that the bill alleges a concealed fraud and is not sworn to is a frivolous objection to the bill. There is no rule of equity practice that I ever heard of that requires a bill to be sworn to unless it is a bill for injunction or a bill for receiver, and even if this was a correct case for a sworn bill, a bill of review based on a default decree could never be maintained on any such ground.

The objection that a writ of assistance is provided for in the decree is just as empty as these other objections. The writ of assistance was directed in the decree on the contingency that Gardner did not yield possession of the property. It was not the decision of a legal question; it does not involve the merits of the case; it is a *pro forma* provision that is found in all decrees of this character;

simply nothing but a writ to enforce the judgment and decree of the court.  It is just about like awarding an execution at law on a judgment for a money recovery.  The decree without such a provision for its enforcement would be of no value whatever.

The case comes down finally to this (and that is treating it as a bill of review, which it is not)—the averment about Mr. Owen's oversight and inattention to the case. I respectfully insist to the court that on a motion to set aside the decree, the court could not vacate the decree on this or any ground, and I respectfully insist to the court that even if this was treated as a bill of review, which it is not, that an absence of the counsel or the mistake of the counsel for a defendant is never any ground for a bill of review where there is no imposition of fraud practiced by the opposing party to induce such mistake or to occasion such inattention.  So, therefore, it is laid down dogmatically as a general rule, that an absence of counsel or mistake of counsel constitutes no ground for a bill of review.  On this point, I cite: *Price* v. *Notrobe*, 17 Ark. 45; *Smith* v. *Bossard*, 2 McCord Eq. 406; *Jones* v. *Pilcher*, 6 Munf. 425; *Cocke* v. *Copenham*, 126 Fed.——; *Tilgham* v. *Werl.*, 39 Fed. 680.

Treating this case as it is, as a motion after the term to set aside a former decree, I respectfully insist that there is no authority in the whole range of our jurisprudence that would authorize such a procedure.  Treating it as a bill of review, I insist, with equal earnestness and positiveness, that no bill of review can be sustained on any of the grounds in this application.

SMITH, C. J., delivered the opinion of the court.

"When a defendant in equity suffers a decree to be taken against him upon a *pro confesso* order, he cannot, in the appellate court, take advantage of the statute of limitations, although it appear upon the face of the bill that the time prescribed by the statute as a bar had

·elapsed. The statute may be waived, and a party will he held to have waived it in equity, unless he shows an intention to rely upon it, by plea, answer, or demurrer." *John Patterson* v. *Ingraham & Reed,* 23 Miss. 87; *Archer* v. *Jones,* 26 Miss 583; *Shoults* v. *Kemp,* 57 Miss 218; *Lewis* v. *Buckley,* 73 Miss. 60, 19 South. 197; *Anderson* v. *McNeal,* 82 Miss. 542, 34 South. 1.

The case of *Jones* v. *Rogers,* 85 Miss. 805, 38 South. 742, relied upon by appellant, was one in which the bar of the statute was interposed by way of demurrer, and therefore has no application here, for the reason that "there is no analogy between a *pro confesso* and a demurrer. By the latter, the party asserts and insists upon all his legal rights; the former more nearly resembles an answer, admitting all the charges of the bill, and claiming no defense." *Patterson* v. *Ingraham, supra.* It is immaterial, therefore, whether the allegations of appellee's bill of complaint bring her cause of action within or without the statute of limitations.

The court below properly included in its decree an order that a writ of assistance issue in event appellant failed to deliver possession of the land to appellee within thirty days, and it is immaterial that the bill contained specifically no prayer therefor. Such a writ is equivalent to the writ of *habere facias possessionem* at law, and issues as of course without notice, so far as the parties to the record are concerned, when necessary to put into execution a decree of the character here under consideration. The decree in this cause settled appellee's right to the possession of the land; and, should appellant refuse to deliver it to her, the writ would issue as of course, without notice to him, upon application being made therefor. This being true, no good could have been accomplished by postponing the award of the writ until after delivery of possession had been refused. *Harney* v. *Morton,* 39 Miss. 508; *Griswold* v. *Simmons,* 50 Miss. 123; *Jones* v. *Hooper,* 50 Miss. 510; *Sichler* v. *Look,* 93 Cal. 600, 29 Pac. 220; *Bird* v. *Belz,* 33 Kan. 391, 6 Pac. 627.

There is no merit in any of appellant's contentions, and therefore the decree of the court below is affirmed.

*Affirmed.*